## JAMES G. KELLY *v.* DANIEL T. WEAVER.

1. CHANCERY : JURISDICTION : USURY.—A court of equity has jurisdiction to grant relief against a usurious contract only where there are circumstances connected with the transaction, aside from the mere usurious agreement, which call for the interposition of the court, on account of the inadequacy of the powers of a court of law to grant full and complete relief. See *Bond* v. *Jones,* 8 S. & M. 368-377: *Smith* v. *Walker,* Ib. 131.

2. SAME: SAME: CASE IN JUDGMENT.—The defendant loaned the complainant a sum of money, and received a conveyance of land and slaves, by which the

borrower was at liberty to redeem the slaves after twelve months, by repaying one-half of the principal, and the lender was to take the land for the other half. After the year elapsed, the land was conveyed to the lender absolutely for one-half the principal, and one of the slaves for the other, and at the same time, or soon afterwards, it was agreed that the borrower might repurchase this slave at any time within three years, at the price for which he had been sold. Before the expiration of that period, the borrower repurchased the slave, and the transaction was finally settled. Afterwards, the borrower filed this bill, charging that the transaction was usurious; that the rent of the land and hire of the slaves greatly exceeded in value the legal interest on the sum loaned; and that the land was worth double the amount at which it was agreed that the lender should take it; and seeking an account and a recovery back of the usurious interest paid. *Held,* that there was nothing in the circumstances of the case which would give a court of equity jurisdiction, and that the bill must be dismissed.

APPEAL from the Chancery Court of Yallabusha county. Hon. William Cothran, chancellor.

*C. G. Armistead,* for appellant.

1. By the agreement, Kelly took the risk of losing the principal by the death of the negroes, and in such case there is no usury. Ord on Usury, 42–466; 1 Call. R. 73–82; 1 Tucker Com. 378.

2. A court of equity has no jurisdiction in this case; the complainant had an adequate remedy at law. 1 Tucker Com. 383; *Jones* v. *Watkins,* 1 Stew. R. 81; *Teague* v. *Russell,* 2 Ib. 42; *Royster* v. *Williams,* 3 Porter R. 436; *French* v. *Garner,* 7 Id. 549.

3. Usury is not *malum in se,* but only *malum prohibitum,* and where the money has been voluntarily paid, it cannot be recovered back either in law or equity. *Perrillat* v. *Puech,* 2 La. R. 42; *Payaras* v. *Turgea,* 14 Ib. 34; *Merchants' Bank* v. *Gove,* 15 Id. 378; *Kenner* v. *Holliday,* 19 Id. 154; *Flower* v. *Millandon,* Ib. 185; *Reid* v. *Duncan,* 1 La. Annl. R. 265; *Millandon* v. *Arnold,* 4 La. R. 542.

*J. Z. George,* on same side.

*F. M. Aldridge,* for appellee.

1. The transaction was a mere device to evade the law against usury. *Reed* v. *Lonsdale,* Hardin R. 7; *Richardson's Adm'r* v.

*Brown*, 3 Bibb. 207; *Fields* v. *Beeler*, Ib. 19; *McGinnis* v. *Hart*, 4 Id. 327; *Mims* v. *Mims*, 3 J. J. Marshall R. 108; *Bishop* v. *Rutlidge*, 7 Id. 217; *Wearterhead* v. *Boyers*, 7 Yerg. 545.

2. The sale of the slave for one-half of the money loaned was a mere mortgage. 1 Hilliard Mortgages, 89; *Bull* v. *Bondurant*, 7 Monroe R. 423; *Skinner* v. *Miller*, 5 Littell, 84; *Eaton* v. *Green*, 22 Pick. 529.

HANDY, J., delivered the opinion of the court.

The case presented by this record is, in substance, this: On the first day of March, 1852, the appellee borrowed of the appellant the sum of $2000; and, to secure the payment thereof, an agreement in writing was entered into between the parties, whereby the appellee agreed to sell to the appellant a tract of land and four named slaves, upon condition that the appellant should then take possession of the property, and enjoy the same, in consideration of the sum of money advanced by him, and that the appellee should have the use of the money from year to year, but that the property transferred should not be redeemed until the 1st of January, 1853; and that, when the redemption should be made, the appellant should take the land at the sum of one thousand dollars in part payment, and that the appellee should execute a deed to him for the same, in fee simple; and upon payment of the entire debt to the appellant, that the property was to be "returned" to the appellee. The bill alleges that the slaves were worth each, annually, $175 or $180, and that the land was worth $2000, the sum loaned, for which sum, or thereabouts, it was sold by the appellant, who also kept the four slaves one year, and then returned them to the appellee, except one, which was afterwards returned to the appellee, on his paying to the appellant the sum of $1000. The bill alleges that the transaction was usurious on the part of the appellant, and that he is indebted to the appellee a considerable sum; and prays an account of the transactions between the parties, and a decree for the sum to be thereupon found due the appellee.

It appears by the pleadings and proofs, that on the 26th of March, 1853, the appellee conveyed the land to the appellant, for the sum of one thousand dollars, in pursuance of the original agreement; and on the 27th of March, 1853, he executed an absolute bill of

sale to the appellant, for one of the slaves embraced in that agreement, in consideration of the sum of $1000; and that a settlement of the previous transaction then took place between the parties. But it appears that the appellant agreed, either at that time or shortly afterwards, to reconvey that slave to the appellee, upon his paying to the appellant the sum of $1000, within three years from that time. The sum was paid within the time prescribed, and the slave delivered to the appellee, whereby the entire transaction between the parties was settled. This bill was filed for the purpose of recovering from the appellant the amount of usury which he received from the appellee by means of the use and possession of the slaves, and by the sale of the land, and also by the money paid by the appellee.

The only question which we deem it necessary to consider is, whether the case is one proper for the interposition of a court of equity. That question is presented by the demurrer to the bill, and it also arises upon the consideration of the whole case upon the pleadings and proofs.

The case is simply a bill to recover back money paid by the appellee upon a usurious contract, which had been finally settled between the parties, and was at an end. There appears to be nothing in it calling for the interposition of equity, except it be the matter of taking an account of the value which the appellant had received from the appellee. And that does not appear to call for the aid of a court of equity. The value of the land and the hire of the slaves were matters easily susceptible of proof before a jury in an action at law, and there could have been no difficulty in the jury ascertaining the amount which the appellant had received therefrom; and, adding thereto the amount which the appellee had paid in money, and crediting the appellant with the principal and legal interest on the money advanced by him, as the bill proposes to do, the amount which the appellee had unjustly paid could readily have been ascertained. There is scarcely a case in the Circuit Court, involving a question of set-off, which would not be as difficult to adjust as the account in this case. The remedy at law appears, therefore, to be clear and ample, and, of course, a court of equity should not interpose.

It is true, that courts of equity have jurisdiction to grant relief

against usurious contracts. But this is only where there are circumstances calling for the interposition of that court, and where the powers of a court of law are not adequate to render complete justice to the party complaining. *Bond* v. *Jones*, 8 S. & M. 368–377; *Smith* v. *Walker*, Ib. 131. There are no such circumstances in this case; and, indeed, it appears simply to be an action to recover back money paid illegally or wrongfully, and depending, like any other such action, upon proof of the claim before the jury.

There was, therefore, no ground for jurisdiction in equity, and the decree must be reversed, and the bill dismissed.